## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
┌─────────────────────────────────┐
│                                 │
│  JEANIE I. KWON,                │
│                                 │
│        Plaintiff,               │
│                                 │
│           v.                    │
│                                 │
│  JAMES H. BILLINGTON, Librarian of │
│  Congress,                      │
│                                 │
│        Defendant.               │
│                                 │
└─────────────────────────────────┘
```

Civil Action No.  03-0940 (JDB)

## MEMORANDUM OPINION

Plaintiff Jeanie Kwon brings this action under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act of 1991

("ADEA"), 29 U.S.C. § 633a et seq, against James Billington, Librarian of Congress, alleging that

she was denied two promotions at the Library of Congress on the basis of her national origin and

age and in retaliation for past complaints of discriminatory conduct.  Defendant has filed a motion

for summary judgment.  For the reasons explained below, defendant's motion is granted, and

judgment is entered in favor of defendant.

## BACKGROUND

The material facts are not in dispute.  Plaintiff is an Asian-American female born in Korea

on July 12, 1937.  See Def. Ex. 2.  She began working for the Library of Congress in 1985 as a

GS-9 preliminary Cataloging Technician.  See Def. Ex. 2; Pl. Ex. 1, at 9.  In 1997, as the result of

a reorganization, she became an Acquisition Technician.  See Pl. Ex. 1, at 12-14.  Plaintiff says

that she has never received any of the promotions she has applied for in her more than twenty

years as an employee at the Library of Congress.  Pl. Mem. at 2.  At the time of the events giving

rise to this case, she had already filed several EEOC complaints, the most recent in April 1997.

See Def. Ex. 26; Pl. Ex. 9.

## I.     The Librarian Cataloger Position

In 1998, the Library of Congress posted a vacancy announcement for the position of a

Librarian Cataloger in the Korean/Chinese Team, Regional Cooperative Cataloging Division,

Library Services.  See Def. Ex. 1.  The announcement listed the minimum qualifications for the

job as including a knowledge of cataloging rules, the ability to organize, analyze and interpret

data,  the ability to communicate and interact with others; and the ability to communicate in

writing.  See Pl. Ex. 2, at 2.  The announcement also stated that the applicant must possess the

ability to read and comprehend the Korean language.  See id. at 2.  Plaintiff submitted an

application for this position.

A reviewing panel of three members of the Library's Human Resources Services reviewed

all of the applications to determine who possessed the minimum qualifications for the position.

The panel determined that three persons were minimally qualified for the Librarian Cataloger

position.  See Def. Ex. 4.  The panel then ranked the qualified applicants and determined that two

of these persons -- plaintiff and Ji Ping Wu -- were the "best qualified" of the candidates for the

position.  See Def. Exs. 4, 5.[1]  Wu is an Asian-American female born in China on October 14,

1968.  See Def. Ex. 3.  She had been employed as a Cataloging Technician at the Library of

Congress since 1995, and she had one year of prior experience working part-time as a professional

cataloger as a student at the University of Iowa.  See id.; Pl. Ex. 26, at 16.  On her application, Wu

[1]  These individuals received an identical "score" from the reviewing panel.  See Def. Ex 4.

explained that she has a "working knowledge" of, and is "able to read and comprehend," the Korean language.  Pl. Ex. 12.

Both individuals on the "best qualified list" were interviewed by Philip Melzer (the selecting official and the Team Leader for the Korean/Chinese Team, Regional Cooperative Cataloging Division, Library Services) and Angela Kinney (the Special Assistant to the Director of National Services of the Library of Congress).  Def. Ex. 6, 7.  The interviewers used the same set of questions for each candidate.  Def. Ex. 6, 7.  As part of the selection process, Melzer contacted plaintiff's direct supervisor (James Macleod) and former supervisor of eight years (Megan Caverly), and Wu's current supervisor (Jerry Wager).  Def. Exs. 10, 11.  Caverly gave plaintiff a poor reference in which she stated that plaintiff had difficulty working with people and lacked attention to detail (although MacLeod gave plaintiff a favorable review).  See Def. Ex. 11; Pl. Ex. 5, at 68.[2]  On the other hand, Wager said that Wu was his "best employee."  Def. Ex. 11. Following the interviews, Melzer and Kinney both determined that Wu was the strongest candidate for the Librarian Cataloger  position, and Wu was selected for the position effective August 2, 1998.  See Def. Exs. 6, 12, 13.

Plaintiff had an active EEOC complaint naming Caverly as a discriminating official at the time that Melzer contacted her.  See Pl. Ex. 9.[3]  Melzer testified that he had no knowledge of any prior EEOC activity by plaintiff at the time of the selection for the professional cataloger position.

---

[2]  Plaintiff also had received a performance rating of "satisfactory" for the preceding year. Def. Ex. 9.

[3]  Plaintiff quotes deposition testimony out of context to suggest that Caverly considered it "unethical" for plaintiff to have filed the EEO complaint against her, but the testimony in fact shows that the "unethical" behavior Caverly was discussing was plaintiff using her husband to contact Caverly's supervisor to try to obtain preferential treatment.  Def. Ex. 31, at 33-35, 51.

Def. Ex. 12; Def. Ex. 28, at 73.  On September 20, 2000, plaintiff filed a formal complaint of

discrimination with the Library's Equal Employment Opportunity Complaints Office (EEOCO),

alleging that she had been denied the promotion on the basis of age, race and national origin, and

had been retaliated against for her prior EEOC complaints.  Def. Ex. 14; Compl. ¶ 13.  She

identified Melzer but not Kinney or Caverly as the alleged discriminating official.  See Def. Ex.

14.

## II.      The Reference Librarian Position

In 2000, the Library posted a Vacancy Announcement for the position of Reference

Librarian in the Korean Section, Asian Division, Area Studies Collections, Library Services.  See

Def. Ex. 15.  The announcement listed the skills and abilities relevant to this position as including

knowledge of Korean, knowledge of reference librarianship, knowledge of automated

bibliographic databases and automated systems, and an ability to communicate and interact with

others and to communicate in writing.  The first three of these requirements constituted the

minimum requirements for this position.  See Def. Ex. 15.

Plaintiff applied for the position, as did Sonya Lee, an Asian-American female citizen who

was born in Korea on March 18, 1959.  Lee was employed at the time as a Cataloging Technician

at the Library of Congress.  Prior to that position, Lee had worked as a Reference Librarian in the

Korean Section from October 1995 to May 1999 (although she was a temporary employee until

May of 1998).  While in that position, her responsibilities included all of the responsibilities of the

open Reference Librarian position.  Def. Ex. 17.  The Library's Human Resources Services ranked

plaintiff and Lee as the two "best qualified" candidates.  Def. Ex. 18.  The reviewing panel scored

Lee's qualifications higher than plaintiff's.  Lee received a total score of 69, whereas plaintiff only

received a score of 63.  Def. Ex. 18.

Both of the candidates were interviewed by selecting official Helen Poe, Chief of the Asian Division of the Area Studies Collection Library Service.  See Def. Exs. 19, 24.  Poe concluded that Lee possessed strong experience and skills and interviewed well, and that Kwon had less directly relevant experience and that her "interview did not go as well," because she would "often times digress," leading Poe to question her communication skills.  Poe contacted Melzer to do a reference check on Lee, and he supported her candidacy, describing her as "cooperative, reliable, highly professional," and "does much more than required or requested" and "has high standards of excellence."  See Pl. Ex. 20.  Poe did not do a reference check on Kwon.  See Pl. Ex. 21.  Plaintiff claims that Melzer testified he was present in the interview and asked several questions, although Melzer appears to have been testifying about a previous position for which plaintiff interviewed. See Pl. Ex. 5, at 79.  Poe selected Lee for the position effective November 19, 2000.  Poe states that she did not have any knowledge of plaintiff's prior EEO activity.  See Def. Ex. 24.  Kwon filed a complaint of discrimination with the Library's EEOCO on January 22, 2001, identifying Helen Poe as the discriminating officer.  See Def. Ex. 25.

## III.   Plaintiff's Action

On April 25, 2003, she filed this action  brought this action under Title VII and the ADEA, challenging the denial of her applications for both the Librarian Cataloger and the Reference Librarian positions.  The Complaint alleges generally that she was "discriminated" against with regard to the Librarian Cataloger position on the basis of "age, race, national origin, and/or because she opposed the LOC's discriminatory practices," Compl. ¶¶ 1, 10, and that she suffered a "further act of reprisal" when the Library denied her the Reference Librarian position.  Following a

period of discovery, defendant filed a motion for summary judgment.  In her opposition, plaintiff

contends that she has stated valid claims of discrimination on the basis of national origin and age,

as well as retaliation, for both the Librarian Cataloger and Reference Librarian positions.

## STANDARD OF REVIEW

I.      **Standard for Summary Judgment**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion

by "informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Id. (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-movant's statements as true and accept all

evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere

existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the

absence of evidence proffered by the non-moving party, a moving party may succeed on summary

judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

## II.      The McDonnell Douglas Framework

A plaintiff has the burden of establishing a prima facie case of discrimination or retaliation by a preponderance of the evidence.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  To establish a prima facie case of discrimination, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002); Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).  To make out a prima facie claim of retaliation, a plaintiff must establish that (1) he engaged in a statutorily protected activity; (2) the employer took an adverse personnel action; and (3) a causal connection existed between the two.  Brody, 199 F.3d at 452; Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985); McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984).

If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  McDonnell Douglas, 411 U.S. at 802.  The employer's burden, however, is merely one of production.  Burdine, 450 U.S. at 254-55.  The employer "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  Id.  If the employer is successful, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination or retaliation.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

The plaintiff "may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" Id. (quoting Burdine, 450 U.S. at 256). But "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination." Id. at 147. Thus, the trier of fact may also "consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.' " Id. (quoting Burdine, 450 U.S. at 255 n. 10). Nonetheless, a plaintiff cannot show that an employer's rationale for an adverse employment action was "a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original) (quotation omitted). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors . . . includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. As the D.C. Circuit has explained:

> Assuming then that the employer has met its burden of producing a nondiscriminatory reason for its actions, the focus of proceedings at trial (and at summary judgment) will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc); see also Waterhouse v. District of Columbia, 298 F.3d 989, 992-993 (D.C. Cir. 2002).

Although the "intermediate evidentiary burdens shift back and forth" under the McDonnell Douglas framework, " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 253).  Once the defendant has proffered a legitimate non-discriminatory reason for its action, then, the question is whether that proffered reason is a pretext for discrimination, and at this point the McDonnell Douglas shifting burdens framework disappears, the sole remaining issue is discrimination vel non, and "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason."  Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003); see Reeves, 530 U.S. at 142-43.  Examination of that issue in this setting therefore requires consideration of all the relevant circumstances, including the strength of the prima facie case, any direct evidence of discrimination, and any circumstantial evidence that defendant's proffered explanation is false (which may be enough with the prima facie case to infer unlawful discrimination).  See, e.g., Reeves, 530 U.S. at 147-48; Lathram, 336 F.3d at 1089; Waterhouse, 298 F.3d at 993, Aka, 156 F.3d at 1290.

## ANALYSIS

Plaintiff argues that, in denying her promotions both to the Librarian Cataloger and Reference Librarian positions, defendant discriminated against her on the basis of national origin and age, and retaliated against her for her prior EEOC complaints.  Defendant moves for summary judgment on each of these claims of discrimination.

## I.    The Librarian Cataloger Position

### A.    Discrimination on the Basis of National Origin and Age

Defendant acknowledges that plaintiff has established a prima facie case of discrimination on the basis of national origin and age for the Librarian Cataloger position, inasmuch as she is of Korean national origin and over the age of 40, she was a qualified candidate for the Librarian Cataloger position, and she was denied the position in favor of a selectee who was of Chinese national origin and under 40 years of age at the time of selection.  See Stella, 284 F.3d at 145; Forman v. Small, 271 F.3d 285, 292 (D.C. Cir. 2001).  However, defendant articulates a legitimate explanation for the denial of the position to plaintiff, which is simply that Wu was a stronger candidate for the position than plaintiff.

Defendant notes that Wu already had professional cataloging experience of the sort that she would need for the job, had received a strongly positive reference from a prior supervisor (who described her as his "best employee"), and had conducted a positive and focused interview.  By contrast, plaintiff did not have any experience in professional cataloging (she was only a preliminary cataloger, which did not include many of the same duties), and therefore would require additional training in these topics if selected.  See Def. Ex. 12, at 3 (Melzer explanation of hiring decision).  Defendant also notes that plaintiff had received only a "satisfactory" performance evaluation for a prior position, a negative reference from a prior supervisor, and gave a poor interview with frequent digressions.  Defendant argues that on the basis of these considerations, it was reasonable for Melzer to have concluded that Wu was the stronger candidate.  Def. Mem. at 10.  Finally, defendant notes that Angela Kinney participated in the interviews as well and independently concluded that Wu was an exceptional candidate and the correct choice, and that plaintiff does not claim that Kinney was motivated by discriminatory animus.  Def. Ex. 6.

Plaintiff naturally takes issue with defendant's assertion that Wu was a more qualified

candidate.  She highlights the difference between her thirteen years of experience at the Library

and Wu's three years, and she contends that her knowledge of Korean was stronger than Wu's.

However, the law is clear in this Circuit that a court "will not reexamine governmental promotion

decisions where it appears the Government was faced with a difficult decision between two

qualified candidates, particularly when there is no other evidence that [a suspect classification]

played a part in the decision."  Stewart v. Ashcroft, 352 F.3d 422, 430 (D.C. Cir. 2004); see also

Fischbach v. Dist. of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Title

VII liability cannot rest solely upon a judge's determination that an employer misjudged the

relative qualifications of admittedly qualified candidates.").

    Although plaintiff contends that Wu's understanding of Korean was so weak that she did

not even meet the minimum qualifications for the position, an independent review panel from the

Library's Human Resources Services department determined that Wu met the minimum

qualifications (which include the ability to read and comprehend the Korean language), and

plaintiff does not appear to claim that the review panel's determination was tainted by

discrimination.  Def. Ex. 5.  Indeed, the record provides an ample basis for the determination that

Wu was the better qualified applicant, and no basis at all for the claim that Melzer was motivated

by discrimination in the hiring process.  See Fischbach, 86 F.2d at 1183 (court does not have

authority under Title VII to "second-guess an employer's personnel decision absent demonstrably

discriminatory motive."

    Plaintiff argues that an inference of discrimination can be drawn from the fact that Melzer

was not content to contact plaintiff's direct supervisor (who was listed as a reference on plaintiff's

application), but instead also sought out the views of Caverly (who was not).  Plaintiff notes that

Melzer relied on only a single reference for Wu.  Pl. Mem. at 4-5.  But it is undisputed that Melzer

contacted Caverly only after his supervisor instructed him to do so.  He explained that plaintiff had

been working in her current section for only a very brief period at the time, and they wanted the

opinion of someone who had known her over a longer period.[4]  Def. Ex. 28b, at 71-72.  Plaintiff

nonetheless speculates that Melzer knew that Caverly would provide a negative review, and he

therefore was determined to obtain her opinion so that he could sabotage plaintiff's application.

She offers no support whatsoever for this assertion.  See Harding v. Gray, 9 F.3d 150, 154 (D.C.

Cir. 1993) ("[A] mere unsubstantiated allegation . . . creates no genuine issue of fact and will not

withstand summary judgment.").

    Thus, the Court can find no basis at all in the record for the contention that discrimination

against the elderly or against people of Korean origin played any role in Melzer's decision to hire

Wu.  In fact, of the four people Melzer hired during his time as team leader of the Korean/Chinese

Team, it is undisputed that three were Korean-Americans and one was Chinese-American, and two

were over 40 at the time of hire, and two were under 40 at the time of hire.  Plaintiff suggests that

an inference of discrimination can nonetheless be made from defendant's reliance in part on the

differences between the candidates in the interview.  Although it is true that a heavy use of highly

subjective criteria such as "interpersonal skills" could support an inference of discrimination, Aka,

156 F.3d at 1298-99, there was no such heavy use here.

    The interview was merely one of the several factors considered by defendant, along with

---

    [4]  Plaintiff claims that Caverly testified that the practice at the Library is now that an
official should only have access to the references that the candidate lists, but Caverly clearly
explained that at the time of the vacancy the rule was different, and "it was standard operating
procedure to ask current and previous supervisors, as well as the two or three names that each
candidate lists as [a] reference."  Def. Ex. 31, at 63-64.

past performance, references, and experience and relevant skills.  Def. Ex. 6, 12.  One of the listed criteria for the position was an "ability to communicate with others."  Def. Ex. 1.  Title VII's concern that over reliance on subjective criteria might mask discrimination is not meant to render performance in an interview as an irrelevant consideration in personnel decisions.  See Bellaver v. Quanex Corp., 200 F.3d 485, 492 (7th Cir.2000) ("[I]t is permissible to evaluate an employee's interpersonal skills when those skills are relevant to the job.").  Melzer's conclusion that plaintiff did not demonstrate strong interpersonal skills is confirmed not only by Kinney's independent assessment of the interviews (she said that Wu was very "explicit" and "positive" but that plaintiff left her with the impression that she did not get along with her co-workers), and Poe's later interview of plaintiff for the Reference Librarian position (she also said that Kwon often digressed and that this caused Poe to "question her communication skills").  Def. Ex. 12.

Thus, plaintiff has not come forward with any evidence that "discrimination was the real reason" for Melzer's decision to hire Wu over her.  St. Mary's Honor Center, 509 U.S. at 515; see Lathram, 336 F.3d at 1088.  Summary judgment will therefore be entered on this claim.

### B.    Retaliation

Defendant contends that plaintiff fails to state a prima facie case with regard to her claim of retaliation for the denial of the Librarian Cataloger position, because she has failed to show that a "causal connection" existed between the protected activity and the adverse personnel action. Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 651 (D.C. Cir. 2003).  To prove that a causal connection existed between protected activities and the alleged retaliatory action, a plaintiff generally must show that the employer knew of his protected activity and that the retaliation closely followed it.  See Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71, 85 (D.D.C. 2003).

Melzer testified that he was not aware of plaintiff's prior EEO activity at the time of the hiring. This evidence is undisputed in the record. Def. Ex. 28, at 73.[5]

Temporal proximity alone may suffice in certain cases to establish the requisite causal connection for retaliation claims. See Gleklen v. Democratic Cong. Campaign Comm., 199 F.3d 1365, 1368 (D.C. Cir. 2000). However, where "mere temporal proximity" is the only evidence of causation, the proximity in time must be "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001); Chadamuri, 274 F. Supp. 2d at 85. Plaintiff's previous EEOC complaint had been in April 1996, and the Librarian Cataloger vacancy was filled in August 1998. Courts consistently hold that even periods much shorter than two years are insufficient as a matter of law to support a stand-alone inference of a causal connection. See Buggs v. Powell, 293 F. Supp. 2d 135, 149 (D.D.C. 2003) (seven months too long); Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C. 1992) (eleven months too long); see generally Woods v. Bensten, 889 F. Supp. 179, 187 (E.D. Pa. 1995) ("[C]ourts generally hold that if at least four months pass after the protected activity without employer reprisal, no inference of causation is created."). Accordingly, the Court concludes that plaintiff cannot make out a prima facie case of retaliation for the Librarian Cataloger claim.[6]

## II.     The Reference Librarian Position

Plaintiff's discrimination and retaliation claims also fall short with regard to the Reference

---

[5] Plaintiff speculates that "a jury could infer that Caverly informed Melzer" of the earlier EEO complaints, but provides no evidence whatsoever to support this assertion. Pl. Statement of Material Facts at 14.

[6] Even if plaintiff were able to prove a prima facie claim of retaliation, she would be unable to demonstrate that defendant's legitimate rationale for the hiring decision was a pretext for retaliation. Plaintiff does not cite any evidence that Melzer intended to retaliate against her, and as explained earlier, is unable to offer convincing evidence that she deserved the position over Wu.

Librarian position.  Defendant again acknowledges that plaintiff has stated a <u>prima facie</u> case for discrimination, and the Court will assume that the one month between plaintiffs' September 2000 complaint and the November 2000 hiring decision is sufficient to support an inference of a causal connection between the protected activity and the adverse action for purposes of a <u>prima facie</u> case of retaliation.  However, plaintiff once again has not proffered any evidence that defendant's legitimate explanation for the hiring decision – that Lee was a stronger candidate – is a pretext for discrimination or retaliation.  <u>St. Mary's Honor Center</u>, 509 U.S. at 515; <u>Lathram</u>, 336 F.3d at 1088.

Poe explains that she chose Lee because she had a "strong background" and had previously worked for several years as a Reference Librarian at the Library of Congress "performing all the duties of the position in question."  Def. Ex. 24, at 1-2.  Lee had also demonstrated a high degree of proficiency with computer technology.  <u>Id.</u> at 1-3.  Finally, Poe reported that Lee gave clear, precise, thorough, and well though out answers to interview questions.  <u>Id.</u> at 3.  Melzer had also given Lee a very positive reference.  On the other hand, Poe said that Kwon had less clearly relevant experience and had a limited knowledge of the relevant databases.  <u>Id.</u>  Furthermore, Kwon's "interview did not go as well as Ms. Lee's."  <u>Id.</u>  Thus, she "selected Ms. Lee based on her knowledge, skills, and experience" compared to Kwon.

Plaintiff insists that she was a stronger candidate than Lee for various reasons, including that she had a working knowledge of both modern Korean and classic Korean, and had first hand knowledge of what Korea was like during the Japanese occupation.  Once again, plaintiff must come forward with more than simply an argument that an employer made an erroneous decision between two qualified candidates.  <u>See</u> <u>Stewart</u>, 352 F.3d at 430; <u>Fischbach</u>, 86 F.3d at 1183.  She

has not done so.[7]  Poe's testimony that she was not aware of the complaint or any other prior EEO activity at the time of the selection process has gone unrebutted, and plaintiff cannot cite any evidence to support the proposition that she was motivated by a discriminatory intent in choosing Wu.  Def. Ex. 24, at 1.  Indeed, even the independent review panel concluded that Lee was a more qualified candidate on the strength of their applications (giving her a higher score than plaintiff). Def. Ex. 18.  Thus, plaintiff has failed to meet her burden of coming forward with evidence sufficient for a jury to conclude that "defendant intentionally discriminated against the plaintiff." Reeves, 530 U.S. at 143; see St. Mary's Honor Center, 509 U.S. at 515.  Accordingly, plaintiffs claims arising out of the Reference Librarian position must fail as well, and summary judgment will be granted for defendant.

## CONCLUSION

For these reasons, the Court grants defendant's motion for summary judgment, and enters judgment in favor of defendant on all claims.  A separate order will issue.


                                        /s/ John D. Bates
                                        JOHN D. BATES
                                        United States District Judge


Dated:   March 31, 2005

---

[7]  The parties dispute whether Melzer played a role in interviewing Kwon for this position, but even if he did, plaintiff offers no evidence that his participation introduced any discriminatory or retaliatory animus into the hiring process.

Copies to:

**Richard L. Swick**
SWICK & SHAPIRO, P.C.
1225 Eye Street, NW
Suite 1290
Washington, DC 20005
Phone:  (202) 842-0300
Fax :  (202) 842-1418
Email:  rlswick@swickandshapiro.com

**Darrell C. Valdez**
UNITED STATES ATTORNEYS OFFICE
CIVIL DIVISION
555 4th Street, NW
Washington, DC 20001
(202) 514-7058
Email: darrell.valdez@usdoj.gov